## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| BRITT A. MAINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 20 CV 934 DDN |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Britt A. Mains for disability insurance benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Act. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## BACKGROUND

Plaintiff Britt A. Mains, who was born on December 31, 1963, filed his applications on March 19, 2018, alleging an amended January 1, 2016 onset date. He alleged disability due to degenerative disc disease, bulging discs, and arthritis in his back. (Tr. 66-67.)

On September 4, 2019, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 15-24.) The Appeals Council denied review. (Tr. 1-3.) The

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. *See* 42 U.S.C. § 405(g) (last sentence).

ALJ's decision therefore became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## MEDICAL AND OTHER HISTORY

The following is plaintiff's medical and other history relevant to his appeal.

On May 27, 2018, plaintiff completed Form SSA-3373, reporting the following.  He cannot stand, sit, or walk for long periods and  bending and getting back up is very painful.  He prepares his own meals, which takes 30-60 minutes or more.  He does laundry twice a month and cleans when needed.  He shops 2-3 times per month for about 30-60 minutes, and his hobbies and interests include watching television every day.   He can walk about a mile before needing to rest.  (Tr. 234-39.)

On June 5, 2008, Gregory Tiller, plaintiff's roommate, completed Form SSA-3380, Function Report Adult-Third Party.  Mr. Tiller answered "I don't know" to most questions.  When asked about plaintiff's household chores, Mr. Tiller wrote, "Laundry, paint inside & outside."  When asked how often and how much time plaintiff spends on these activities, Mr. Tiller wrote "I don't know."  When asked, "[i]f the disabled person doesn't do house or yard work, explain why not," Mr. Tiller wrote, "None. Yes [ILLEGIBLE] work inside and outside house."  When asked about plaintiff's hobbies and interests, Mr. Tiller wrote, "[t]aking care of his dog, watching TV ... Every day and he loves his dog."  When asked to list the places plaintiff goes on a regular basis, Mr. Tiller wrote, "grocery store and 7 eleven".  Mr. Tiller stated that plaintiff's back affects a lot of things that he can do now. (Tr. 254-61.)

On January 9, 2017, plaintiff reported low back pain radiating into his hips.  His symptoms were aggravated by bending, lifting, standing, and twisting, and were relieved by lying down.  His pain was worse during the winter.  Plaintiff reported the level of his pain was 7/10.   Tikisha Johnson, FNP, at People's Health Center, diagnosed primarily generalized osteoarthritis.  She advised him to apply moist heat for comfort and schedule a physical examination.  (Tr. 360-62.)

On November 10, 2017, plaintiff followed up at People's Health Center.  Jacquelyn McFadden, M.D., refilled Tramadol, nicotine patch, and acetaminophen.  (Tr. 370-71.)

On December 27, 2017, plaintiff reported persistent lower back pain radiating into the right hip.  He described the pain as piercing, sharp, and throbbing.  His symptoms were aggravated by bending and standing and relieved by pain medications.  Plaintiff requested a Tramadol refill for his back pain, which he described as 8/10.  Michelle Williams, at People's Health Center, diagnosed dorsalgia or back pain and advised him to report to urgent care because she could not prescribe controlled substances.  (Tr. 372-75.)

On January 4, 2018, plaintiff reported persistent low back pain radiating into his right hip. He described the pain as stabbing and throbbing.  His symptoms were aggravated by standing and cool weather and were relieved by pain medications.  His pain level that day was 8/10.  Dr. McFadden diagnosed lumbago or pain in the muscles and joints of the back and prescribed Tylenol and a lidocaine patch.  She would determine whether an MRI was needed.  (Tr. 376-79.)

A January 4, 2018 x-ray of the lumbar spine revealed severe degenerative disk disease at L1-2 with mild degenerative disk disease at L2-3.  (Tr. 380.)

On March 9, 2018, Dr. McFadden refilled his lidocaine patch and acetaminophen. (Tr. 384.)

On June 1, 2018 x-rays of the entire spine revealed thoracolumbar levoscoliosis, or scoliosis curving to the left, with positive sagittal imbalance and positive pelvic tilt and compression deformity of L1 with less than twenty percent (20%) height loss.  (Tr. 394.)

 On June 18, 2018, plaintiff followed up with Dr. McFadden.  He requested referrals to a pain clinic, physical therapy, and an orthopedist.  (Tr. 441.)

On June 21, 2018, plaintiff reported back pain radiating into his hips but not into his legs.  His pain level was 9/10.  Laxmi Thummalakunta, M.D., a radiologist at St. Louis University, administered bilateral L1-2 medial branch nerve injections with steroids and bupivacaine.  (Tr. 407-09.)

A June 26, 2018 MRI of plaintiff's lumbar spine revealed multilevel lumbar degenerative disk and joint disease, greatest at L1-2 and L2-3, with up to mild-to-moderate central canal stenosis or narrowing at L2-3; and bilateral L5 pars defect with grade one anterolisthesis at L5-S1.  Specifically, it showed mild focal kyphosis at L1-2; flare/T2 enhancement, consistent with endplate degenerative changes associated with severe degenerative disk disease; severe loss of disk height at L1-2; and mild diffuse disk bulge at L5-S1 with small extrusion extending superiorly underneath the posterior longitudinal ligament.  (Tr. 345-46.)

On June 29, 2018, James Johnson, D.O., medical consultant, concluded that plaintiff could perform light work.  He should never climb ladders, ropes, or scaffolds, secondary to degenerative disk disease to avoid straining his back, and he should also avoid concentrated exposure to extreme cold, which may exacerbate low back pain.  The most recent evidence that Dr. Johnson reviewed is dated June 21, 2018.  Dr. Johnson believed he retained the RFC for light work given his reported ability to walk a mile, paint the house, do the cleaning, shopping, and driving, albeit with confirmed degenerative disk disease on imaging with pain distribution consistent with imaging.  (Tr. 71-74.)

On July 18, 2018, plaintiff saw Georgios Alexopoulos, M.D., a neurosurgeon at St. Louis University, for chronic low back pain.  A bilateral median nerve injection one month earlier had provided no pain relief.  Plaintiff described the pain as unbearable, and it affects his ability to perform activities of daily living, including working, ambulating, and household chores.  His back pain increases with prolonged sitting, standing, walking and flexion.  The pain improves when he lies completely flat.  He reported occasional hip numbness on the right side, which was previously diagnosed as right hip bursitis.  He feels more hunched over in the past five years and he walks with a limp due to his right hip pain. He was a current every day smoker.  He uses lidocaine patches for back pain.  He had not seen a physical therapist or orthopedist yet as advised to do so during his last visit.  His primary care doctor discontinued Tramadol because of the risk of addiction.  (Tr. 505-06.)

- 4 -

On physical examination, Dr. Alexopoulos observed his gait is antalgic or causing a limp, and positive sagittal imbalance.  He recommended a trial of conservative management, including physical therapy for at least six weeks, prior to consideration for surgical intervention.  He described the case as a complex deformity spine case and wanted plaintiff to be evaluated by orthopedics before discussing further plans of care.  (Tr. 507-08.)

On August 28, 2018, plaintiff saw Elizabeth Ekpo, M.D., a resident at St. Louis University.  He reported that his back and leg pain had increased over the last year.  He reported burning, stabbing back pain with associated burning pain in the calf.  The pain impacted his activities of daily living. The back pain was aggravated by back extension, prolonged sitting, standing, or walking.  He noticed that his posture is more hunched over. On physical examination, Dr. Ekpo observed tenderness to palpation in the lumbar spine, antalgic gait, rounded shoulders, thoracic kyphosis, and right truncal shift.  He had normal motor strength and sensation in the upper and lower extremities and the ability to heel-and-toe walk.  Dr. Ekpo ordered CTs of the thoracic and lumbar spines and advised plaintiff to follow up with attending physician Robert Morgan, M.D., after the CTs are complete. Dr. Morgan, attending physician, agreed with Dr. Ekpo to obtain CT scans for operative planning purposes and stressed the importance of smoking cessation prior to proceeding with elective spinal surgery.  (Tr. 524-26.)

 On August 28, 2018, Dr. Morgan interpreted CTs of plaintiff's thoracic and lumbar spines to reveal upper lumbar kyphosis with resultant stenosis at the conus level and compensatory caudal lumbar lordosis in a patient who continues to use tobacco.  (Tr. 527.)

On September 20, 2018, plaintiff reported persistent low back pain.  He described the pain as aching and throbbing.  His pain level was 10/10 and the lidocaine patches were not effective.  Dr. McFadden diagnosed lumbago or muscle and joint pain in the lower back and advised plaintiff to "continue care per orthopedics and neurosurgery.  She refilled Tramadol and acetaminophen."  (Tr. 436-39.)

On October 2, 2018, CTs of the thoracic and lumbar spines for preoperative evaluation revealed degenerative disk disease, worse at L1-2 where there is significant

reduction of the disk space, vacuum disk phenomena, endplate degenerative changes and mild kyphotic deformity; bilateral L5 pars interarticular fractures with mild anterolisthesis of L5-S1 vertebral bodies; mild multilevel degenerative changes; and a significant atherosclerosis of the abdominal aorta and its branches. (Tr. 532-34.)

On February 13, 2019, plaintiff reported worsening back pain, occurring persistently in the middle of his back, with no radiation. He described the pain as stabbing. His symptoms were aggravated by bending, flexion, lying/rest, sitting, standing, and walking, and relieved by pain medications. His pain level was 5/10 that day. Dr. McFadden refilled acetaminophen, Tramadol, and his lidocaine patch. She diagnosed lumbago and advised plaintiff to keep his appointment with the surgeon the next day. (Tr. 425-28.)

On February 14, 2019, plaintiff saw Katelynn Andreen, M.D., orthopedic resident at St. Louis University. Plaintiff reported aching pain in the lower back with occasional radiation to the right leg to the level of the knee. His pain was 7/10. He was able to walk/stand for a couple blocks without pain. He did not have pain at night and did not use an assistive device to ambulate. He has used Tramadol without relief. He has not participated in physical therapy in the past. He received a steroid injection, which did not help the pain. Howard Place, M.D., orthopedist at St. Louis University, advised plaintiff to follow up in 6 to 8 weeks after he completes physical therapy. (Tr. 528, 531-32.)

Plaintiff underwent physical therapy from March 30 to May 29, 2019. He initially reported difficulty walking for more than ten (10) minutes, standing, going up and down stairs, lifting, cooking, and cleaning. He could vacuum, and his pain level was generally 6/10. He used Tramadol for pain and can function after taking it. He can sleep through the night with a lidocaine patch. He stated that he would like to get back to a normal routine, such as doing housework. On physical examination, his joint integrity/mobility was hypomobile throughout the lumbar spine. When assessing plaintiff's gait, the physical therapist observed increased base of support (BOS); forward trunk flexion; stiff gait; increased toe-out on the right greater than on left; decreased stance time on right; and shuffling foot on the right. He had moderate tenderness along the L1-3, L5-S1, increased

muscle hypertrophy along the left, greater than on right thoracolumbar area, decreased range of motion in the spine with extension, flexion and bilateral side bend, positive bilateral slump test and positive bilateral straight leg raise.  He would continue physical therapy once a week for an additional eight weeks until returning to the doctor for a surgery consult.  (Tr. 459, 462, 464, 470-97.)

On April 14, 2019, plaintiff reported to Dr. Howard Place that he had recently started physical therapy and that his back had improved after one week of therapy.  At that time straight leg raising was negative, and his lower extremity sensation was intact.  Dr. Howard recommended additional physical therapy.  (Tr. 32.)

On May 14, 2019, plaintiff saw Dr. McFadden, reporting low back pain with no radiation.  He described the pain as an ache and throbbing.  His symptoms were aggravated by flexion, standing and walking.  Dr. McFadden refilled Tramadol, the lidocaine patch, and acetaminophen.  (Tr. 420-24.)

**ALJ Hearing**

On August 22, 2019, plaintiff appeared and testified at a hearing before an ALJ.  (Tr. 45-65.)  At the hearing, plaintiff's attorney stated that plaintiff would undergo back surgery as soon as he can stop smoking for thirty days.  (Tr. 48.)

Plaintiff testified to the following.  He has not smoked in almost three (3) weeks.  He experiences sharp, stabbing pain in his back constantly, as well as muscle spasms.  It is difficult to sit for any length of time.  It is difficult to walk.  He can walk ½ mile or so, and then he must sit down or lie down.  He can stand for ½ hour or so.  He can hardly bend or lift anything and he cannot get back up once he is bent over unless he has something to lean on.  (Tr. 49-50.)

He underwent an epidural injection in his back, which alleviated the pain for about one week or so after which the pain returned.  He rents a room from his friend, who owns the house and requires him to clean his bedroom.  He does his own laundry. He does his own car repair if he is able to.  He does not do yardwork.  His car muffler once fell off in

- 7 -

his driveway, so he needed to fix it right there.  He does not change his own motor oil.  (Tr. 51-55.)

A vocational expert (VE) also testified to the following at the hearing.  Plaintiff has past relevant work as a cashier, DOT Code 211.462-010, light with an SVP 2.  The ALJ asked the VE to assume a hypothetical individual with the same age, education, and work background as plaintiff.  The individual was functionally limited to lifting 20 pounds on occasion and 10 pounds frequently.  The person could sit, stand and/or walk about six out of eight hours with normal breaks.  The person should avoid climbing ladders, ropes, scaffolds, working unprotected dangerous heights and around unprotected dangerous machinery.  The person should not work in cold temperature extremes, can occasionally climb ramps or stairs, and can occasionally stoop, kneel, crouch, crawl.  The VE testified that such an individual could perform plaintiff's past relevant work as a cashier as it is generally performed.  (Tr. 60-63.)

## GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole.  *Pate-Fires v. Astrue,* 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.*  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.*  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits under the Social Security Act, a claimant must prove he is unable to perform any substantial gainful activity due to a medically

determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pate-Fires*, 564 F.3d at 942 (describing five-step process).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the functional capacity (RFC) to perform past relevant work (PRW).  *Id.* § 404.1520(a)(4)(iv).  The plaintiff bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942.  If the Commissioner determines the plaintiff cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404. 1520(a)(4)(v).

## DECISION OF ALJ

On September 4, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act.  (Tr. 15-26.)  At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since his January 9, 2017, alleged amended onset date.  At Step Two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; upper lumbar kyphosis and compensatory caudal lumbar lordosis, right hip bursitis, and generalized osteoarthritis.  At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the Commissioner's list of presumptively disabling impairments, 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 17-19.)

The ALJ found that plaintiff had the RFC to perform "light" work as defined in the regulations, except he can lift and carry ten pounds frequently and twenty pounds occasionally. He can sit about six hours and stand/or walk about six hours in an eight-hour workday with normal breaks. He should never climb ladders, ropes, or scaffolds, work at unprotected dangerous heights or around unprotected dangerous machinery. He should not work in cold temperatures and extremes. He can occasionally climb ramps or stairs, and occasionally stoop, kneel, crouch, and crawl. (Tr. 20.)

At Step Four, the ALJ found plaintiff was able to perform his past relevant work as a cashier. Consequently, the ALJ found that plaintiff was not disabled under the Act from January 9, 2017, through the date of the decision. (Tr. 23.)

## DISCUSSION

Plaintiff argues the ALJ erred in failing to develop the record fully and fairly, in determining his residual functional capacity, and in evaluating his credibility. Specifically, he contends the ALJ's reliance on the opinion of Dr. Johnson, a non-treating, non-examining physician, does not satisfy the ALJ's duty to develop the record fairly and fully. He argues that even if Dr. Johnson's opinion was consistent with the record evidence, the ALJ failed to obtain medical evidence to translate subsequent evidence into an RFC assessment. He notes the ALJ failed to obtain medical evidence to translate subsequent evidence into an RFC assessment and that Dr. Johnson was unaware that he needed spinal surgery. He contends the ALJ needed a medical opinion to translate the objective clinical findings from the physical therapist and from his treating physicians. He contends there is no medical evidence in the record addressing plaintiff's ability to function in the workplace between June 2018 and September 4, 2019, and instead the ALJ made his own independent medical findings in lieu of obtaining a medical opinion. He finally argues the RFC assessment is particularly important in this case because, if he is limited to sedentary work, he meets the GRID requirements to qualify for disability. The Court disagrees.

- 10 -

The ALJ adequately developed the record and made a fair and informed decision. The ALJ considered the opinion of State agency medical consultant Dr. Johnson, who reviewed the evidence on June 29, 2018, and found that plaintiff could perform light work with several restrictions. (Tr. 22, 70-74, 81-85). The ALJ found Dr. Johnson's opinion generally persuasive because it was supported by and consistent with the record. More specifically, the ALJ reasoned that plaintiff's treatment for his physical impairments was routine and conservative. (Tr. 22, 51, 240, 414-18, 421-26, 431-32, 437-39, 442, 506, 510-13, 516, 528, 532.) Moreover, plaintiff reported an ability to perform a wide range of activities of daily living, including walking one-half mile without the need for an assistive device. (Tr. 22, 234-43, 239-40.)

As to plaintiff's argument that Dr. Johnson did not review the entire record, the Court finds it irrelevant because the ALJ discussed plaintiff's treatment before and after Dr. Johnson's opinion and found that his opinion was consistent with that evidence. (Tr. 21-22.) For instance, the ALJ discussed plaintiff's history of low back pain, including worsening symptoms with bending, lifting, standing, twisting, and cold weather in January 2017. (Tr. 21, 360-62.) The ALJ noted that plaintiff was diagnosed with osteoarthritis until a February 2018 MRI showed multilevel degenerative disc disease with mild to moderate stenosis, and mild diffuse disc bulging. (Tr. 21, 346-48, 362.) In June 2018, he underwent a medial branch block in his lower back. (Tr. 21, 409-13.) In August 2018, he reported increased low back pain with leg pain over the past year, and difficulty standing, walking, and sitting for prolonged periods. (Tr. 21, 524.) Although plaintiff's back was tender to palpation and his gait was antalgic, his motor strength, sensation, and reflexes were intact, and he was able to walk on his heels and toes. The ALJ also noted that plaintiff was considering surgery, but not until he stopped smoking. (Tr. 21-22, 525-26.)

When plaintiff was seen in February 2019 for a surgical consultation, he had no tenderness to palpation; his posture was erect and he was able to heel, toe, and tandem walk without difficulty; and his sensation and reflexes were normal. Rather than recommending surgery, Dr. Place referred plaintiff to physical therapy. By April 2019, plaintiff was still

- 11 -

smoking, but felt that his back was improving after a week of physical therapy.  At that time, straight-leg raise testing was negative, and plaintiff's sensation remained intact.  Dr. Howard recommended additional physical therapy (Tr. 21, 530-32.)

Based on his consideration of the record evidence, the ALJ found that, "[a]lthough the record supports [plaintiff's] allegation of low back pain, it does not support [his] testimony that he must lie down six hours a day . . . . [n]or does the record support that [he] can only sit or stand for thirty minutes at a time."  (Tr. 21.)  Rather, the ALJ found that the evidence indicated plaintiff pain was improving with physical therapy and conservative treatment; and he did not require emergency room treatment, hospitalization, or repeated invasive treatments to manage his pain.  (Tr. 21-22.)

The ALJ also tied the evidence to his RFC findings, stating:

> In consideration of [Plaintiff's] lumbar degenerative disc disease, upper lumbar kyphosis and compensatory caudal lumbar lordosis, right hip bursitis, and generalized osteoarthritis, the undersigned limits [Plaintiff] to the performance of light work and no climbing of ladders, ropes, or scaffolds; no work at unprotected heights or around dangerous machinery; no work in cold temperature extremes; and only occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling.  The medical evidence does not support any additional restrictions.

(Tr. 22.)

In addition to consideration of his longitudinal medical treatment, the ALJ considered plaintiff's sporadic work history that raised a question as to whether his continuing unemployment was actually due to medical impairments.  (Tr. 22, 182-90.)  *See Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (ALJ may consider plaintiff's sporadic work history as a factor weighing against the consistency of their claim).

Part of the RFC determination includes an assessment of the claimant's credibility regarding subjective complaints.  Using the Polaski factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting Polaski factors must be considered before discounting subjective complaints).

In addition to the claimant's prior work record, the Polaski factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  *Polaski*, 739 F.2d at 1322 ; see also 20 C.F.R. § 404.1529.

Here, the ALJ considered the Polaski factors.  The adjudicator is "not required to discuss each Polaski factor as long as '[she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'"  *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)).  Plaintiff walked at least one-half mile at a time, prepared daily meals, shopped for groceries, performed household chores such as vacuuming, performed some car maintenance, drove, went out alone, and painted his house.  (Tr. 22-23, 234-43, 239-40, 254-60, 458, 470, 528, 532.)  As to plaintiff's objection to the ALJ's characterization and consideration of his activities, although activities such as light housework are not alone sufficient to prove a claimant can work, the extent of plaintiff's activities, when considered in conjunction with the medical record in this case, supports the ALJ's decision.  *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

Here, the ALJ determined that plaintiff had the RFC to perform "light" work, with various limitations.  The ALJ cited plaintiff's imaging studies, clinical findings, treatment effectiveness, and ADLs as described above.  (Tr. 21-22.)  Based on the above, the Court concludes substantial evidence supports the ALJ's finding.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.


_____/s/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 24, 2021.

- 13 -